The Chattanooga, Rome and Columbus Railroad Company *v.* McLendon.

1. In a suit by an executrix against railroad and construction companies for damages from their having removed a stock gap from their right of way, leaving growing crops of the estate exposed to cattle and other animals, testimony as to cost of fencing the right of way, the amount of fencing necessary and the cost of keeping up the same, was not admissible, she having made no *profert* in her declaration of her letters testamentary, and not having submitted them to the court, and not having submitted a copy of the will to show how long she was entitled to hold the land as executrix, and it not appearing whether the land may not have been devised to a particular child or children.

2. The suit being upon a contract and not for a tort, it was error to charge that if the stock-gap was maliciously removed, that fact might be considered in arriving at what damages the plaintiff ought to recover.

January 14, 1891. By two Justices.

Actions.   Damages.   Torts.   Contracts.   Evidence. Before Judge Maddox.   Floyd superior court.   March adjourned term, 1890.

Mrs. McLendon, as executrix of S. D. McLendon, brought her action against the Rome and Carrollton Construction Company and the Chattanooga, Rome and Columbus Railroad Company for $682.75 damages,

alleging as follows: The estate of her testator consists in part of land in the 4th district and 4th section of Floyd county. About April 25, 1888, defendant or defendants assessed the right of way through the land, which was then in cultivation, having growing upon it a crop for the benefit of the estate; and the land and crops were fully protected up to the time of the assessment. At that time and while the crops were being planted, there was a stock-gap and fence on the land protecting it and the crop, the stock-gap having been built by defendants, as it was their duty to do, to protect the land when they moved the fence to build the railroad through the land. When the jury assessed the damages for the right of way through the land, the assessment was based upon the railway and defendants' maintaining, in proper condition, the stock-gap or other means for protecting the land and crops from animals, which fact was known to defendants, and the land taken and compensation made upon that basis and agreement. In all of this the defendants acquiesced and thereby became bound to maintain the stock-gap or otherwise protect the crops and land; but in violation of this duty they not only neglected to maintain the gap or otherwise protect the crops and land, but removed the stock-gap, thereby leaving the fields entirely exposed, as a result of which cattle and other animals had free access and devoured and destroyed the crops to an extent set forth in the declaration, which alleged further damage arising from animals going upon the land when wet, and packing it and rendering it hard for cultivation. In order to cultivate or make any crop, it was necessary for petitioner to build a fence of 1,800 panels, at a cost of $360, and she asked that that amount be awarded for building the fence and $40 per year for maintaining it, or whatever was reasonable for that purpose. She further alleged that it was the

duty of defendants to maintain the stock-gap, not only as a matter of law but as a matter of agreement at the time of the assessment of damages to right of way, and that the removal of the gap was malicious and for the purpose of damaging the crops and land. The defence to the action was, that the law imposed no obligation upon defendants to construct cattle-guards, and that the damages on account of condemnation of right of way and construction of the road had been duly assessed by a jury, and the amount of the verdict paid, and accepted in full satisfaction by the owner of the land.

The testimony for plaintiff tended to show the following: The Chattanooga, Rome and Columbus railroad-track runs for half a mile through the lot of land, and a side-track runs from it to the Rome and Decatur railroad. Bryan testified that it would take a half-mile of fencing to protect cultivated land along this main line, which fencing could be built for from $150 to $200, and it would take half this much more to fence the side-track, and it would cost $10 to keep the fence in repair. Persons were constantly guarding the crops from cattle. It is very injurious to land for cattle to run over and pack it; for cultivation, land tramped and packed is worth only half as much as before, and it takes more than a year for it to get over tramping. The land in question was worth $3 per acre for cultivation; it may be worth more than before the damage was assessed. Shropshire testified that he was on the jury that assessed the damages to the lot of land; Reece and Hal Wright, attorneys, were there; Reece was representing the Chattooga County Syndicate, which was headed by Cleghorn (who also was present), to furnish right of way through Floyd county to corporation of Rome; and Wright was probably representing McLendon. Shropshire supposed Cleghorn represented

the railroad or parties at interest; did not know that anything was said about the stock-gap definitely, but thought Reece mentioned about stock-gaps; did not hear Cleghorn say anything. Moore testified that he was present when the jury assessed damages; something was said about fencing, and Cleghorn said it was no use to consider that, that there would be stock-gaps built; Reece said the Supreme Court had decided a railroad was not obliged to keep up stock-gaps, which was new to witness, and it seemed so to Cleghorn, but Cleghorn said they would put in stock-gaps all along the line; and that question of fencing was withdrawn from the jury. Cleghorn was present at the trial of these cases all along the line. Moore thought the cost of protecting all the land by fence from the main and side-track would be $100, and that the fence would not need repairs for six or eight years. One Price was a tenant under McLendon, and afterwards under the executrix in 1888, and his crop was badly injured, the witness could not remember to what extent. The landlord had a half-interest in Price's crop and a third in the corn of Jennings, another tenant, and a fourth in Jennings' cotton. This witness thought it would take from $120 to $140 to erect the fence. He could not estimate in dollars and cents the damage to the land by the tramping of the cattle, but supposed $300 or $400 up to the filing of the suit, from April 25, 1888, to March 5, 1889. The crop had to be guarded at night to save it. It was a regular pasture in common. The stock-gap was taken out by defendants a week after McLendon's death. Jennings got judgment for $126.50, and Price one for $97.50, against defendants. The lot was damaged $200, another part of farm $100, by cattle coming through the gap and running over it. The son of plaintiff testified that the field through which the railroad runs and the whole farm under one

fence was about 400 acres; the stock-gap was put in by the railroad company voluntarily, the last of March, 1888, and in the last of August, 1888, they tore it out; after a week or so they put in another higher up, and witness changed the fence to this new gap; a week after his father's death they tore it out, and the stock came in and ate up crops, and there was no way to keep them out; there was no way to fence; had not the stuff, and could hardly fence at all shaped like it.is; witness went to see defendants' attorney about it, and he said Williamson would not put it in for less than $250; had to keep a boy to mind the stock-gap; there was a good fence there before the gap was torn out, but since the gap was torn out it will cost $900 to buy the timber, have it split and hauled and put up; the land was iniured one half by the tramping of cattle; in 1888 the estate had, independent of the tenants, ten or fifteen acres of corn; the damage to the corn was one hundred bushels, to cotton $50, to fruit $200; witness lost ten or fifteen days himself at $1 a day, to keep out cattle; never had any trouble except at the gap in northwest corner of the lot; could not imagine why they tore it out, unless Williamson thought he could get $200 or $300 out of "us"; it would take 20,000 rails to fence the Chattanooga, Rome and Columbus, and 10,000 to fence the Rome and Decatur; never had any trouble with the stock on the Rome and Decatur side.     In evidence was the verdict of the jury of assessors, which was a finding in favor of S. D. McLendon, April 25, 1888, "for all damages and right of way through all of lot of land number 123 in 4th district and 4th section of said county; and we further find, upon the payment by said railroad company or its agent or attorney of the sum of $450, that the title to the right of way, being a strip of land sixty-six feet wide through said land, shall be and is vested in said railroad company."     Also a re-

ceipt to the Chattanooga, Rome and Columbus railroad, dated May 8, 1888, signed by S. D. McLendon, for $450, "by the hands of C. C. Cleghorn, in payment of the within verdict." Also a letter dated September 17, 1888, from defendants' attorneys to the son of plaintiff, stating that the writer saw Williamson that morning in reference to the stock-gap question; that Williamson was not willing, after the Chattooga people had to pay $450 for the right of way, to put in the stock-gap unless some of the money was refunded to them, and his figures to the writer were $250; that the latter told him he knew McLendon could not do that much, and at Williamson's suggestion the writer had written to Cleghorn to come down, and would see if through him something could be done to give McLendon some relief in this vexatious matter. Also a letter dated October 18, 1888, from the attorney to Mrs. McLendon, stating that the writer had no authority to make any contract as to the stock-gap, and could only make recommendations to the company, which he had already done, and all he could now do was to refer her to Williamson, the president of the road; that the jury required the company to pay $450 in full for all damages to the land, and that the company and they contend that the company is not bound to put in stock-gaps, but be that as it might, the writer trusted Mrs. McLendon and the president could arrange the matter.

The jury found for the plaintiff $500. The defendants moved for a new trial upon the following among other grounds:

(1-3) Verdict contrary to law and evidence, and excessive.

(4) Error in admitting, over defendants' objection, the testimony of Bryan as to expense and cost of fencing off the right of way of defendants' road from the rest of the farm, and of the amount of fencing necessary

and the cost of keeping up a fence of that kind; the objection being, because all the damages to the land and the value of the right of way had been duly and legally assessed and adjudicated between the parties, the verdict and assessment being in writing and conclusive, and no parol or other testimony being admissible to contradict or vary it. (The judge certified that he admitted the testimony here complained of, because the suit was for damages arising subsequent to the verdict, and after the stock-gap was removed from the McLendon farm, and not to contradict or explain away the award, and because it was alleged the stock-gap was to remain.)

(8) Error in charging: "It is charged that this was maliciously done for the purpose of injuring the party, from the fact that they had already recovered a verdict; that is what the plaintiff claims. You look at the evidence and see whether there is any proof of that or not. What has the evidence disclosed? Does it disclose that it was maliciously done? If so, that is a fact which you may consider in making up your verdict here, in arriving at what the plaintiff in this action ought to recover."

The motion was overruled, and defendants excepted.

W. T. TURNBULL and W. W. BROOKES, for plaintiffs in error.

C. A. THORNWELL and J. BRANHAM, *contra*

SIMMONS, Justice.

Under the pleadings and the evidence in this case, we think the court erred in not granting a new trial upon the 4th and 8th grounds of the motion. The 4th ground complains that the court erred in admitting the testimony of Bryan as to the expense and cost of fencing the right of way of the defendants' road, and the amount of fencing necessary and the cost of keeping up fencing

of that kind. Mrs. McLendon brought this suit as the executrix of her husband's estate. She made no *profert* of her letters testamentary in her declaration, nor did she submit them to the court and jury ; nor did she submit a copy of the will to the court to show how long she was entitled to hold this land as executrix. As far as appears from the record, she was only entitled to hold it a sufficient time to make distribution among the heirs of the testator; or, as far as we know from this record, this particular land may have been devised to a particular child or children, and if so, it would be manifestly improper to allow the executrix to recover from the railroad company for the purpose of building and repairing the fences in the future. Moreover, it is very doubtful whether she could recover damages of this kind or not, under the law. She had not built the fence, and it is not certain that she ever will build it; and it seems to us that she has recovered damages she has not yet sustained, for a fence she has not built. It is somewhat akin to the case reported in the celebrated Galt's Decisions, where one man sued another for "a well that he didn't dig."

We also think the court erred in charging the jury as complained of in the 8th ground of the motion. The charge in substance is that if the stock-gap was maliciously removed, the jury might take that fact into consideration in arriving at what damages the plaintiff ought to recover. This suit was brought upon a contract, and not for a tort ; and in actions on contracts the amount of the recovery is the damage sustained by reason of the branch thereof. Our code, §2943, says : "Exemplary damages can never be allowed in cases arising on contracts."                    *Judgment reversed.*